**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
------------------------------------------------------------------------X

ALEJANDRO ABREU,                             CASE NO.: 1:19-cv-24789

      Plaintiff                             **COMPLAINT**
                                     **Plaintiff Demand a Trial by Jury**

      v.

UNITED PARCEL SERVCES, INC.,

      Defendants.
------------------------------------------------------------------------X

Plaintiff, ALEJANDRO ABREU, through his counsel, Derek Smith Law Group, PLLC, hereby complains of Defendants UNITED PARCEL SERVICES, INC., and alleges as follows:

## NATURE OF CASE

1. Plaintiff ABREU complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ( "Title VII"); the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("FCRA"); and seeks damages to redress the injuries Plaintiff suffered as a result of being exposed to race, color, and/or national origin, sex/gender discrimination, sexual harassment, hostile work environment, retaliation, and constructive discharge arising out Defendants' unlawful employment practices.

## JURISDICTION AND VENUE

2. This is an action for monetary damages and injunctive relief pursuant to § 1981, Title VII, and Florida law.

3. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under § 1981 and Title VII.

4. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. §1367(a).

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because Defendants were located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## PROCEDURAL REQUIREMENTS

6. Plaintiff has complied with all statutory prerequisites to file this action.

7. On or around July 2, 2018, Plaintiff dual filed his charge with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR") Charge number 510-2018-05340.

8. An EEOC filing automatically operates as a dual FCHR filing.

9. On or around August 21, 2019, Plaintiff received the Right to Sue Letter in reference to his EEOC and FCHR Charge.

10. Plaintiff filed this complaint within ninety (90) days of the issuance of the EEOC and FCHR's Right to Sue letter.

11. An EEOC filing automatically operates as a dual Florida Commission on Human Relations ("FCHR") filing.

## PARTIES

12. At all material times, Plaintiff ALEJANDRO ABREU (hereinafter referred to as "Plaintiff" or "ABREU") is a dark-skinned, individual man of Cuban descent who is a resident of the State of Florida.

13. At all material times, Defendant UNITED PAREL SERVICES, INC., is a foreign business corporation duly existing by the virtues and laws of the State of Georgia that does business in the State of Florida.

14. Defendant UNITED PAREL SERVICES, INC., is "Defendant" or "UPS".

15. Defendant UPS is an employer or as defined by all laws under which this action is brought and employs the requisite of employees.

## STATEMENT OF FACTS

16. Plaintiff ALEJANDRO ABREU (hereinafter referred to as "Plaintiff" or "ABREU") is seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by his employer on the basis of his race, color, national origin, sex/gender, together with hostile work environment, and unlawful termination.

17. Plaintiff is an individual heterosexual man who is a resident of the State of Florida.

18. Plaintiff is an American citizen whose parents originated from Cuba. Plaintiff identifies as a Black-Hispanic of Cuban descent.

19. Defendant UNITED PARCEL SERVICE, INC. (hereinafter referred to as "UPS") was and is a foreign business corporation duly existing by the virtues and laws of the State of Georgia that does business in the State of Florida.

20. At all material times, Defendant UPS was and is an American multinational package delivery company with locations throughout the United States.

3

21. At all material times, Defendant's employee DANNY SALGADO (hereinafter referred to as "SALGADO") was and is an individual man believed to reside in the State of Florida.

22. At all material times, SALGADO was employed by Defendant as a supervisor.

23. At all material times, Defendant's employee JOEL BESU (hereinafter referred to as "BESU") was and is an individual man believed to reside in the State of Florida.

24. At all material times, BESU was employed by Defendant as a supervisor.

25. Defendant UPS hired Plaintiff ABREU in or around April 2018.

26. Plaintiff ABREU began working at Defendant UPS on or about April 23, 2018. Plaintiff's direct supervisor was SALGADO.

27. On his first day of work with Defendant, Plaintiff was assigned as a loader and unloader. Upon entering the trailer, he was to load and unload, Plaintiff heard Defendant's employees (names unknown) playing some sort of game that involved them using terms such as "ASS," "TITS," "PUSSY," and "DILDO."

28. Plaintiff also heard Defendant's employees freely bandying about the racial epithet "NIGGA."

29. Later on, during that first shift, Plaintiff heard the same employees discussing two of Defendant's female employees making dehumanizing and derogatory sexual remarks about them including but not limited to "I WOULD EAT HER ASS AND FUCK THE SHIT OUT OF HER."

30. Plaintiff's second shift while employed by Defendant began as inauspiciously as his first shift. Plaintiff once again heard Defendant's Employees resume the word game, they had been playing the day before, using the same sexually charged terms they had used the day before.

31. Moreover, once again Defendant's employees continued to use the racial epithet "NIGGA" repeatedly throughout the course of his shift.

4

32. Later during the shift, SALGADO moved Plaintiff to another location. While at this new location Plaintiff expressed to SALGADO his extreme discomfort and distress at having to be exposed to the racially and sexually discriminatory language freely engaged in by Defendant's employees.

33. Plaintiff further disclosed that he heard one of Defendant's Employees state, "Don't put that motherfucker in my trailer."

34. After making a complaint to Defendant's employee SALGADO regarding the racial epithet from Defendant's employee, Plaintiff ABREU was approached by Defendant's employee BESU. Plaintiff reiterated his complaints to BESU who then stated, that this was the second time they had to speak with these employees about a similar situation.

35. Defendant's Employee BESU's acknowledgment that the use of racial epithets and derogatory language was a continuing problem is a clear indication of the existing racially and sexually discriminatory animus permeating Defendant UPS.

36. The next day SALGADO texted Plaintiff to inform him what time his shift would begin. When Plaintiff asked him if he had to go back to work with the same employees he had complained about the day before, SALGADO informed him that he would in fact have to go work with them again.

37. Feeling incredibly disgusted and disheartened by the futility of his complaints to Defendant's employees SALGADO and BESU and the continued discrimination by his co-workers, Plaintiff ABREU was constructively discharged on April 25, 2018 after only working with Defendant for two days.

38. Defendant's Employee SALGADO called Plaintiff on or about April 28, 2018 and invited him to come back to work. SALGADO promised Plaintiff that the condition of the workplace

environment would be less hostile, and that management would do all they could to ensure Plaintiff would be safe from any discrimination going forward. Plaintiff declined SALGADO's offer at this time.

39. In or around May 2018, SHIRLEY TOLIVER (hereinafter referred to as "TOLIVER") from Defendant UPS's Human Resources Department contacted Plaintiff to find out if there was anything that could be done for Plaintiff to come back to work.

40. Plaintiff expressed his concerns and extreme discomfort about the racially and sexually derogatory remarks used by his colleagues during this conversation.

41. Plaintiff informed TOLIVER about the racial and vulgar sexual comments and hostile working environment at the UPS worksite and how his supervisors had informed him of the futility of their prior attempts to quash the unlawful comments.

42. TOLIVAR then assured Plaintiff that Defendant UPS would resolve the unlawful conduct at the work site.

43. At this time, Plaintiff agreed to return to work for Defendant UPS insofar as the condition of the workplace would not be hostile and that he would not be subjected to any further discrimination on the basis of his sex, gender, or race.

44. In or around May 9, 2018, TOLIVAR called Plaintiff and informed him that the employees at the worksite were instructed to cease using racially and sexually discriminating language.

45. Upon his return to work with Defendant UPS, Plaintiff was told by a co-worker that the employees who made the racist and sexually discriminating comments were reprimanded by Human Resources. The co-worker also added that the men involved were upset about the reprimand and actively looking for the "snitch".

46. Upon receiving this information, Plaintiff feared for his personal safety at the work site.

6

47. Defendant placed Plaintiff in the same location with the same employees that had actively engaged in the discriminatory behavior.

48. During this shift it became apparent to Plaintiff that everyone knew who had made the complaint to HR that resulted in the reprimand. By way of example, Plaintiff was subjected to harsh looks by the other employees, and they resumed the use of the sexually and racially discriminatory remarks around Plaintiff, making sure they made these statements loudly enough for Plaintiff to hear them.

49. At one point, Plaintiff heard an employee remark that another coworker "LIKES TO EAT BOOTY HOLE AND THAT HE IS NASTY".

50. On the same day a different employee yelled "THESE NIGGAS DON'T KNOW WHAT THEY ARE DOING."

51. Later in the day, Plaintiff noticed a dramatic change in his duties. By way of example, Plaintiff was assigned to work alone in a trailer, and he was given different tasks than the ones he had performed during his first week of employment with Defendant. These tasks were more onerous than the tasks the other employees were performing and made more difficult because he was performing them alone.

52. In addition to placing Plaintiff back in the same environment which caused him to fear for his for his life and safety, Defendant UPS along with employees SALGADO and BESU were negligent in their ability to correct the hostile and discriminatory condition of the workplace.

53. UPS's employees continued to discuss their sexual exploits in the presence of Plaintiff often stating, **"I BANG MY BITCH IN THE ASS"**, "I WOULD LIKE TO FUCK [THE FEMALE SUPERVISOR] IN THE ASS", and "THESE NIGGERS DON'T KNOW HOW TO EAT ASS".

54. Furthermore, employees continued to freely use the racial epithet "NIGGA."

55. Defendant's employees' above sexual and racial comments had the purpose and effect of intimidating and making Plaintiff uncomfortable in the workplace on account of his race, sex, gender, and prior complaints.

56. The above are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

57. At all material times, Plaintiff objected to the constant harassment and unlawful comments, however employees and supervisors continued to make unwelcomed racial and sexual remarks.

58. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

59. As a result of Defendant's discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

60. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

61. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendant.

**FIRST CAUSE OF ACTION:**
**RACIAL, COLOR AND NATIONAL ORIGIN DISCRIMINATION**
**UNDER TITLE VII**

62. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1-61 above.

63. Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer

Practices; it shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her/his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

64. Title VII further provides that "unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

65. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his race or national origin and subjecting Plaintiff to racial discrimination.

66. Specifically, Defendant was aware of the persistent and pervasive use of racial epithets such as "NIGGA" by Defendant's employees, as acknowledged by BESU when he reiterated his complaints to BESU.

67. Furthermore, Defendant UPS failed to take adequate corrective action to prevent Defendant's Employees from continuing to engage in the derogatory, dehumanizing, and racially discriminatory comments and use of epithets, choosing to hold a meeting and issuing a general reprimand rather than holding Employees accountable for their discriminatory behavior.

68. This is evidenced by the fact that when Plaintiff returned to work after this meeting the use of terms such as "NIGGA" continued and was more aggressively directed towards Plaintiff.

69. As a result of the Defendant's violations of Title VII, Plaintiff has suffered damages, including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm,

diminishment of career opportunities, and other harm, both tangible and intangible.

70. WHEREFORE, Plaintiff demands judgment against Defendants, and pray for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that the Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## SECOND CAUSE OF ACTION:
## HOSTILE WORK ENVIRONMENT UNDER TITLE VII

71. Plaintiffs incorporates by reference each and every allegation made in the above paragraphs 1-61 of this complaint.

72. Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

73. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

74. Here, Defendants' conduct occurred because of Plaintiffs' race, color and/or national origin, and was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment were altered and that the working environment was intimidating, hostile and abusive.

75. Furthermore, Defendant UPS failed to take adequate corrective action to prevent Defendant's

Employees from continuing to engage in the derogatory, dehumanizing, and discriminatory use of racial epithets such as "NIGGA," choosing to hold a meeting and issuing a general reprimand rather than holding Employees accountable for their discriminatory behavior.

76. This is evidenced by the fact that when Plaintiff returned to work after this meeting the discriminatory racial epithets continued and was more aggressively directed towards Plaintiff.

77. At all material times, Plaintiff subjectively regarded the use of the term "NIGGA" as verbally harassing conduct that was unwelcome and unwanted and objectively opposed the conduct.

78. Defendants' conduct was both severe and pervasive. Plaintiff was subjected to these unwanted and unwelcome racially discriminatory remarks throughout his shifts every day of his short tenure with Defendant UPS.

79. Defendants' conduct unreasonably interfered with Plaintiff's work performance.

80. As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

81. WHEREFORE, Plaintiff demands judgment against Defendants, and pray for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that the Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## THIRD CAUSE OF ACTION:
## RETALIATION UNDER TITLE VII

82. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1-61.

83. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

84. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has   opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

85. Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions or privilege of employment because of his opposition to the unlawful employment practices of Defendant.

86. Specifically, Defendant significantly and materially changed the conditions of Plaintiff's duties, forcing him to perform different tasks than Plaintiff performed at the beginning of his tenure with Defendant and forcing him to work alone, thus making his job more onerous than that of the Employees that had engaged in the discriminatory behavior.

87. Furthermore, Plaintiff was forced back into the same environment with the same employees who had not only discriminated against him in the first place but were upset and angry that he had complained about their behavior and they were reprimanded as a result.

88. As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental

anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

89. WHEREFORE, Plaintiff demands judgment against Defendants, and pray for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that the Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## FOURTH CAUSE OF ACTION: SEX/GENDER DISCRIMINATION UNDER TITLE VII

90. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1-61 above.

91. Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer Practices; it shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her/his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

92. Title VII further provides that "unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

93. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his sex and/or gender and subjecting Plaintiff to

sexual harassment.

94. Specifically, Defendant was aware of derogatory and sexually explicit comments made by Defendant's employees, as acknowledged by BESU when he reiterated his complaints to BESU.

95. Furthermore, Defendant UPS failed to take adequate corrective action to prevent Defendant's Employees from continuing to engage in the derogatory, dehumanizing, and vulgar commentary, choosing to hold a meeting and issuing a general reprimand rather than holding Employees accountable for their discriminatory behavior.

96. This is evidenced by the fact that when Plaintiff returned to work after this meeting the sexual commentary continued and was more aggressively directed towards Plaintiff.

97. As a result of the Defendant's violations of Title VII, Plaintiff has suffered damages, including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

98. WHEREFORE, Plaintiff demands judgment against Defendants, and pray for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that the Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## FIFTH CAUSE OF ACTION:
## HOSTILE WORK ENVIRONMENT UNDER TITLE VII

99. Plaintiffs incorporates by reference each and every allegation made in the above paragraphs 1-61 of this complaint.

100. Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

101. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

102. In sexual harassment cases, examples of conduct warranting a finding of a hostile work environment include verbal abuse of a sexual nature; graphic verbal commentaries about an individual's body, sexual prowess, or sexual deficiencies; sexually degrading or vulgar words to describe an individual; pinching, groping, and fondling; suggestive, insulting, or obscene comments or gestures; the display in the workplace of sexually suggestive objects, pictures, posters or cartoons; asking questions about sexual conduct; and unwelcome sexual advances. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) ("discriminatory intimidation, ridicule, and insult"); Meritor Savings Bank FSB v. Vinson, 477 U.S. 57, 60-61 (1986) (repeated demands for sexual favors, fondling, following Plaintiff into women's restroom, and supervisor's exposing himself); Mandel v. M & Q Packaging Corp., 706 F.3d168 (3d Cir. 2013) (stressing that inquiry "must consider the totality of the circumstances" rather than viewing component parts separately).

15

103. Here, Defendants' conduct occurred because of Plaintiffs' gender, and was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment were altered and that the working environment was intimidating, hostile and abusive.

104. Furthermore, Defendant UPS failed to take adequate corrective action to prevent Defendant's Employees from continuing to engage in the derogatory, dehumanizing, and vulgar commentary, choosing to hold a meeting and issuing a general reprimand rather than holding Employees accountable for their discriminatory behavior.

105. This is evidenced by the fact that when Plaintiff returned to work after this meeting the sexual commentary continued and was more aggressively directed towards Plaintiff.

106. At all material times, Plaintiff subjectively regarded the sexually explicit verbally harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

107. Defendants' conduct was both severe and pervasive. Plaintiff was subjected to these unwanted and unwelcome sexually explicit and vulgar remarks throughout his shifts every day of his short tenure with Defendant UPS.

108. Defendants' conduct unreasonably interfered with Plaintiff's work performance.

109. As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

110. WHEREFORE, Plaintiff demands judgment against Defendants, and pray for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an

adjudication and declaration that the Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

### SIXTH CAUSE OF ACTION:
### RETALIATION UNDER TITLE VII

111. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1-61.

112. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

113. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has  opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

114. Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions or privilege of employment because of his opposition to the unlawful employment practices of Defendant.

115. Specifically, Defendant significantly and materially changed the conditions of Plaintiff's duties, forcing him to perform different tasks than Plaintiff performed at the beginning of his tenure with Defendant and forcing him to work alone, thus making his job more onerous than that of the Employees that had engaged in the discriminatory behavior.

116. Furthermore, Plaintiff was forced back into the same environment with the same employees who had not only discriminated against him in the first place but were upset and angry that he had complained about their behavior and they were reprimanded as a result.

117. As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

118. WHEREFORE, Plaintiff demands judgment against Defendants, and pray for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that the Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## SEVENTH CAUSE OF ACTION:
## DISCRIMINATION UNDER 42 U.S. CODE § 1981
## (AGAINST DEFENDANT UPS)

119. Plaintiff incorporate by reference each and every allegation made in the above paragraphs of this complaint.

120. 42 U.S. Code § 1981 - Equal rights under the law states provides:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

121. Defendants engaged in unlawful employment practices that violated 42 U.S.C §1981, by discriminating against Plaintiff on account of Plaintiff being of Black Cuban-American race.

122. Defendants violated Section 1981 by intentionally discriminating against Plaintiffs in a serious tangible way with respect to compensation, terms, conditions or privileges of his employment.

123. Plaintiffs' race characteristics were a determinative or motivating factor in Defendants' employment actions.

124. Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

125. Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated Defendants' actions against Plaintiff.

126. Defendants' harassment and highly offensive conduct and statements to Plaintiff on account of Plaintiff's race adversely affected the terms, conditions, and privileges of Plaintiff's employment.

127. Defendants' conduct was adequately severe and pervasive so as to alter the work environment and create an abusive and hostile work environment for Plaintiff.

128. Defendants acted upon a continuing course of conduct.

129. Defendants constantly enforced a purposefully discriminatory pattern and practice of depriving Plaintiff, a Cuban-American individual, of the equal rights afforded to him, in violation of 42 U.S.C. §1981.

130. Defendants violated Section 1981, and Plaintiff suffered numerous damages as a result.

131. Plaintiff makes its claim against Defendants under all of the applicable paragraphs of 42 U.S. Code § 1981.

132. As a result of Defendants' violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship which provided substantial compensation and benefits to the Plaintiff.

133. As alleged above, Defendant acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## EIGHT CAUSE OF ACTION: RETALIATION UNDER 42 U.S. CODE § 1981 (AGAINST DEFENDANT UPS)

134. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

135. Plaintiff, as an individual of Black Cuban-American race, was discriminated against by Defendants on account of his race, in violation of Section 1981.

136. Plaintiff engaged in protected activity by making several complaints to the Defendants and opposing Defendants' unlawful actions.

137. Plaintiff was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place. Specifically, once he returned to work after making said complaints, he was forced to work in the same environment with the same Employees who had discriminated against him and used racial epithets such as the term "NIGGA" repeatedly in violation of Plaintiff's rights to be free from racial, color, or national origin discrimination.

138. Further, Defendant also materially changed the conditions of Plaintiff's employment such as making him work alone and making his work conditions more onerous than that of the Employees who had engaged in the discriminatory behavior.

139. There was a causal connection between the Defendants' materially adverse actions and Plaintiff's protected activity.

140. The Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

141. As a result of the Defendants violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against  Defendants and pray for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section 1981; (7) punitive damages in accordance with Section 1981; (8) back pay and front pay in

accordance with Section 1981 (9) all additional general and equitable relief to which Plaintiff is entitled.

**NINTH CAUSE OF ACTION: DISCRIMINATION UNDER FCRA**
**[AGAINST UPS DEFENDANT]**

142. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1-61 of this complaint.

143. Plaintiff suffered as a result of being exposed to race discrimination, hostile work environment, retaliation, and unlawful constructive discharge.

144. Defendants are prohibited under the FCRA from discriminating against Plaintiff because of his race, color and/or national origin with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

145. Defendants violated the FCRA by unlawfully discriminating against Plaintiff based on his race, color and/or national origin and by allowing an unsafe work environment that was hostile towards men in which the Defendants were fully aware of.

146. Defendants violated the sections cited herein by failing to consider Plaintiff's requests to make the work environment safe, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff.

147. Plaintiff has been damaged by the illegal conduct of Defendant.

**TENTH CAUSE OF ACTION HOSTILE WORK ENVIRONMENT UNDER FCRA**
**[AGAINST UPS DEFENDANTS]**

148. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1-61 of this complaint.

149. Defendant allowed Defendant's Employees to discriminate against and harass Plaintiff on the basis of his race, color, and national origin; when he complained of the unlawful conduct Defendant failed to take adequate remedial action to prevent the discriminatory behavior from continuing.

150. At all material times, Plaintiff opposed and complained of Defendant's unlawful conduct.

151. After Plaintiff opposed and complained of Defendant's unlawful conduct, Defendants forced Plaintiff to resign was, in whole or in part, in retaliation for his complaints and opposition to unlawful discrimination in the workplace.

152. The Defendants have discriminated against and harassed the Plaintiff in the terms and conditions of his employment and has denied the Plaintiff the ability to have continued employment in retaliation for her lawfully having engaged in statutorily protected activity and as a result of his complaints of discrimination.

153. Plaintiff was forced to resign out of fear for his life because of Defendant's failure to adequately correct the actions of its Employees and returning Plaintiff to the same location and the same coworkers that not only had engaged in the harassment of Plaintiff but also were upset with him for "snitching." Defendant therefore failed to give Plaintiff adequate assurances that the workplace would be safe for him.

154. Defendants violated the sections cited herein by failing to consider Plaintiff's requests to make the work environment safe, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of his sex/gender and for having complained of discrimination.

### ELEVENTH CAUSE OF ACTION: DISCRIMINATION UNDER FCRA
### [AGAINST UPS DEFENDANT]

155. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1-61 of this complaint.

156. Plaintiff suffered as a result of being exposed to sexual harassment, gender discrimination, hostile work environment, retaliation, and unlawful constructive discharge.

157. Defendants are prohibited under the FCRA from discriminating against Plaintiff because of his race, color and/or national origin with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

158. Defendants violated the FCRA by unlawfully discriminating against Plaintiff based on his race, color and/or national origin and by allowing an unsafe work environment that was hostile towards men in which the Defendants were fully aware of.

159. Defendants violated the sections cited herein by failing to consider Plaintiff's requests to make the work environment safe, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff.

160. Plaintiff has been damaged by the illegal conduct of Defendant.

### TWELFTH CAUSE OF ACTION
### HOSTILE WORK ENVIRONMENT UNDER FCRA
### [AGAINST UPS DEFENDANTS]

161. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1-61 of this complaint.

162. Defendant allowed Defendant's Employees to discriminate against and harass Plaintiff on the basis of his sex and gender; when he complained of the unlawful conduct Defendant failed to take adequate remedial action to prevent the discriminatory behavior from continuing.

163.  At all material times, Plaintiff opposed and complained of Defendant's unlawful conduct.

164. After Plaintiff opposed and complained of Defendant's unlawful conduct, Defendants forced Plaintiff to resign was, in whole or in part, in retaliation for her complaints and opposition to unlawful discrimination in the workplace.

165. The Defendants have discriminated against and harassed the Plaintiff in the terms and conditions of his employment and has denied the Plaintiff the ability to have continued employment in retaliation for her lawfully having engaged in statutorily protected activity and as a result of his complaints of discrimination.

166. Plaintiff was forced to resign out of fear for his life because of Defendant's failure to adequately correct the actions of its Employees and returning Plaintiff to the same location and the same coworkers that not only had engaged in the harassment of Plaintiff but also were upset with him for "snitching." Defendant therefore failed to give Plaintiff adequate assurances that the workplace would be safe for him.

167. Defendants violated the sections cited herein by failing to consider Plaintiff's requests to make the work environment safe, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of his sex/gender and for having complained of discrimination.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all damages including compensatory, emotional distress, statutory, punitive damages, attorneys fees and costs in an amount to be determined at the time of trial and awarding

Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful conduct.

Dated:      November 19, 2019
                Miami, Florida

Respectfully submitted,

Katheline Cortes, Esq.
Derek Smith Law Group, PLLC
*Attorneys for Plaintiff*
701 Brickell Avenue, Suite 1310
Miami, FL 33131
Tel: 305-946-1884
katheline@dereksmithlaw.com

26